**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SHELLY J. SMITH, | 3:15-cv-00218-LRH-VPC |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | **OF U.S. MAGISTRATE JUDGE** |
| Defendant. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge.   The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.   Before the court is plaintiff's motion for remand or reversal (#9), defendant's cross-motion to affirm and opposition (#s 12/13), and plaintiff's reply (#17).   For the reasons set forth herein, the court recommends that plaintiff's motion be denied, and defendant's cross-motion be granted.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On May 3, 2012, Shelly Smith ("plaintiff") filed a claim for Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act, alleging a disability onset date of March 7, 2012.   (Administrative Record ("AR") 162–68.)   The Social Security Administration denied plaintiff's application in the first instance on August 22, 2011, and upon reconsideration on March 19, 2013.   (*Id.* at 85–88, 91–93.)

On December 10, 2013, plaintiff and her attorney appeared at a hearing before Administrative Law Judge ("ALJ") Eileen Burlison.   (*Id.* at 37–63.)   The ALJ issued a written decision on January 15, 2014, finding that plaintiff had not been disabled at any time between March 7, 2012 and December 31, 2012, the date plaintiff was last insured.   (*Id.* at 24–30.) Plaintiff appealed, and the Appeals Council denied review on February 18, 2015.   (*Id.* at 1–4.) Accordingly, the ALJ's decision became the final decision of the Commissioner ("defendant").

1    Having exhausted all administrative remedies, plaintiff filed a complaint for judicial

2    review on April 17, 2015 (#1).  In her motion for remand, plaintiff contends that the ALJ erred in

3    discounting plaintiff's subjective pain and limitations testimony.

## II.    STANDARD OF REVIEW

5    The initial burden of proof to establish disability in a claim for SSDI benefits rests upon

6    the claimant.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To satisfy this burden, the

7    claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of

8    any medically determinable physical or mental impairment which can be expected . . . to last for a

9    continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

10    This court has jurisdiction to review an ALJ's decision to deny a claim for benefits after

11    the claimant has exhausted all administrative remedies.  *See Brewes v. Comm'r of Soc. Sec.*

12    *Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012).  The court must affirm the ALJ's decision

13    unless it rests on legal error or is unsupported by substantial evidence in the administrative

14    record.  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g)

15    ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial

16    evidence, shall be conclusive.").  The substantial evidence standard is not onerous.  It is "more

17    than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

18    mind might accept as adequate to support a conclusion."  *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th

19    Cir. 2012) (internal quotation omitted).

20    Although the ALJ need not discuss every piece of evidence in the record, she cannot

21    ignore or omit evidence that is significant or probative.  *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th

22    Cir. 2012).  The ALJ's discussion must adequately explain the decision in light of such evidence.

23    "The ALJ, not the district court, is required to provide specific reasons for rejecting [the

24    evidence.]"  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically

25    discussing rejection of lay testimony).  The district court's review is thus constrained to the

26    reasons asserted by the ALJ.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

27    To determine whether substantial evidence exists, the court must look at the record as a

28    whole, considering both evidence that supports and undermines the ALJ's decision; it "may not

1    affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec.*

2    *Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation omitted).  Where "the evidence is

3    susceptible of more than one rational interpretation, the decision of the ALJ must be upheld."

4    *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (internal quotation omitted).  The ALJ alone is

5    responsible for determining credibility and resolving ambiguities.  *Garrison*, 759 F.3d at 1010.

6    ### III.    DISCUSSION

7    **A.    SSDI claims are evaluated under a five-step sequential process.**

8         The Commissioner follows a five-step sequential process for determining whether a

9    claimant is "disabled" for the purposes of SSDI.  20 C.F.R. § 404.1520(a)(4); *see also Barnhart v.*

10   *Thomas*, 540 U.S. 20, 24 (2003).  Step one directs the ALJ to determine whether the claimant is

11   engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not

12   disabled and the Commissioner denies the claim.  *Id.* § 404.1520(b).

13        The second step requires the ALJ to determine whether the claimant's medically

14   determinable impairment is "severe."  *Id.* § 404.1520(a)(4)(ii).  "Severe" impairments are those

15   that significantly limit the claimant's physical or mental ability to do basic work activities.  *Id.* §

16   404.1520(c).  The Commissioner will deny the claim if the claimant lacks a severe impairment or

17   combination of impairments.  *Id.*

18        At step three, the claimant's impairment is compared to those listed in the Social Security

19   Regulations at 20 C.F.R. Pt. 404, Subpart P, Appendix 1.  *Id.* § 404.1520(a)(4)(iii).  Subpart P,

20   Appendix 1 "define[s] impairments that would prevent an adult, regardless of his [or her] age,

21   education, or work experience, from performing *any* gainful activity, not just substantial gainful

22   activity."  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal quotation omitted).  Where the

23   claimant's impairment is on the list, or is equivalent to a listed impairment, and the claimant also

24   meets the corresponding durational requirement, the claimant is deemed disabled.  20 C.F.R. §

25   404.1520(d).  However, for an impairment to match a listing, "it must meet *all* of the specified

26   medical criteria.  An impairment that manifests only some of those criteria, no matter how

27   severely, does not qualify."  *Zebley*, 493 U.S. at 530 (emphasis in original).

28

1    If the Commissioner does not find disability at step three, review of the claim proceeds to

2    step four.  There, the ALJ considers whether the claimant can perform past relevant work despite

3    the severe impairment.  20 C.F.R. § 404.1520(a)(4)(iv).  If so, the claimant is not disabled.  *Id*. §

4    404.1520(e).  The ALJ will find that the claimant can return to past relevant work if he or she can

5    perform the "actual functional demands and job duties of a particular past relevant job" or the

6    "functional demands and job duties of the [past] occupation as generally required by employers

7    throughout the national economy."  *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001)

8    (internal quotation omitted).

9    In making the step four determination, the ALJ considers the claimant's residual

10    functional capacity ("RFC") and the physical and mental demands of the work previously

11    performed.  20 C.F.R. § 404.1520(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir.

12    2010).  The RFC is the most the claimant can do despite his or her limitations.  20 C.F.R. §

13    404.1545(a)(1).  To determine the claimant's RFC, the ALJ must assess all the evidence,

14    including medical reports and descriptions by the claimant and others of the claimant's relevant

15    limitations.  *See id*. § 404.1545(a)(3).  The ALJ is not, however, required to accept as true every

16    allegation the claimant offers regarding his or her limitations.  *Orn v. Astrue*, 495 F.3d 625, 635

17    (9th Cir. 2007).  The ALJ must follow a two-prong inquiry where the claimant alleges subjective

18    pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *see also* SSR

19    96-7p, 61 Fed. Reg. 34483 (July 2, 1996).  First, the ALJ determines "whether the claimant has

20    presented objective medical evidence of an underlying impairment which could reasonably be

21    expected to produce the pain or other symptoms alleged."  *Lingenfelter*, 504 F.3d at 1036

22    (internal quotation omitted).  Second, if the first prong is met and no evidence suggests that the

23    claimant is a malingerer, the ALJ may reject the claimant's allegations only by articulating "clear

24    and convincing" reasons for doing so.  *Id*.

25    The "clear and convincing" standard is the most demanding standard in Social Security

26    case law, *Garrison*, 759 F.3d at 1015, and it requires the ALJ to "specifically identify the

27    testimony she or he finds not to be credible and [to] explain what evidence undermines the

28    testimony," *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Brown-Hunter v.*

1    *Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).  The ALJ must therefore cite to the record and discuss

2    specific evidence therein.  *See Vasquez v. Astrue*, 572 F.3d 586, 591–92, 592 n.1 (9th Cir. 2008);

3    *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The ALJ may consider a variety of factors

4    in weighing a claimant's credibility, including inconsistencies in a claimant's testimony, his or

5    her reputation for truthfulness, an inadequately explained failure to seek treatment, or a lack of

6    support from the medical evidence.  20 C.F.R. § 404.1529(c); *Orn*, 495 F.3d at 636.  The focus,

7    however, is ultimately upon the reviewing court.   The credibility determination must be

8    "'sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's

9    testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.'"

10   *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d

11   853, 856–57 (9th Cir. 2001)).

12        If step four demonstrates that the claimant cannot do the work he or she did in the past, the

13   burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs

14   available in the national economy.  20 C.F.R. § 404.1560(c).  There, the ALJ must consider the

15   claimant's RFC, age, education, and past work experience to determine whether the claimant can

16   do other work.  *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); *Hoopai v. Astrue*, 499 F.3d 1071,

17   1075 (9th Cir. 2007).  The ALJ will typically reference "the grids," under which a finding of

18   disability may be directed, and also consider the testimony of a vocational expert ("VE").  *Tackett*

19   *v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).  Where the grids do not direct a finding of

20   disability, the ALJ must identify other jobs that the claimant can perform and which are available

21   in significant numbers in the claimant's region or in several regions of the United States.   42

22   U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c).  If the ALJ establishes that the claimant's RFC

23   and transferable skills allow him or her to perform other occupations, the claimant is not disabled.

24   20 C.F.R. § 404.1566.  Conversely, if the ALJ concludes that the claimant cannot adjust to any

25   other work, he or she is disabled and entitled to benefits.  *Id*. § 404.1520(g).

26   **B.      The ALJ followed the five-step process and concluded that plaintiff was not disabled.**

27        In reviewing plaintiff's claims for benefits, the ALJ followed the five-step process

28   described above.  The ALJ first determined that plaintiff did not engage in substantial gainful

1   activity from March 7, 2012, the alleged onset date, through December 31, 2012, the date plaintiff

2   was last insured.  (AR 26.)  At step two, the ALJ found that plaintiff's mild degenerative disc

3   disease of the lumbar and cervical spine was a severe impairment that limits her ability to perform

4   basic workplace activities.  (*Id.*)  The ALJ also considered plaintiff's allegations of pain in her

5   elbow and right shoulder and of depression, but concluded that the record did not establish those

6   to be medically determinable impairments.  (*Id.*)  At step three, the ALJ found that plaintiff did

7   not have an impairment or combination of impairments that met or medically equaled the severity

8   of any listed impairment.  (*Id.* at 27.)

9          The ALJ proceeded to step four and made several findings.  To begin, the ALJ concluded

10   that plaintiff's RFC through the date last insured permitted her to perform light work as defined

11   by 20 C.F.R. § 404.1567(c), with a restriction to no more than occasional postural movements.

12   (*Id.*)  In so concluding, the ALJ found that plaintiff's impairments could be expected to cause the

13   symptoms she had alleged, but that her statements regarding the intensity, persistence, and

14   limiting effects of those symptoms were not entirely credible.  (*Id*. at 28.)  As the basis for the

15   adverse credibility finding, the ALJ cited a lack of strong support for the objective medical

16   evidence, plaintiff's poor work history, and plaintiff's conservative course of treatment.  (*Id.* at

17   28–29.)  Finally, based on the evidence in the record and the testimony of a vocational expert, the

18   ALJ concluded that plaintiff was capable of performing her past relevant work as a cashier

19   through the date she was last insured.  (*Id.* at 29.)

20          A claimant is deemed not disabled at step four if capable of performing past relevant

21   work.  20 C.F.R. §§ 404.1560(b)(3).  Thus, having found plaintiff able to perform her past

22   relevant work, the ALJ held that she was not disabled and denied her claim for benefits.  (AR 30.)

23   **C.      The ALJ permissibly discounted plaintiff's subjective pain testimony.**

24          Plaintiff challenges just one aspect of the ALJ's decision: the adverse credibility finding.

25   Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting

26   plaintiff's subjective pain and limitations testimony, and, therefore, that the ultimate disability

27   determination lacks the support of substantial evidence.  The ALJ found plaintiff to be less than

28   fully credible for three reasons, which the court considers in turn: (1) the objective medical

1   evidence does not strongly support plaintiff's allegations; (2) plaintiff's "work history does not

2   demonstrate a long-term pattern of working full-time prior to alleging disability, which detracts

3   from the credibility of her allegations that she is not working full-time because she is disabled;

4   and (3) plaintiff's lack of overall treatment despite access to medical care, and, relatedly, her

5   conservative or routine treatment prescriptions.[1]  (*Id.* at 28–29.)

6         First, a lack of support from the objective medical evidence was a clear and convincing

7   reason to discount plaintiff's credibility.  Plaintiff argues that the ALJ mischaracterized the results

8   of the medical imaging studies, and also ignored other relevant records regarding plaintiff's

9   weight, muscle tone, gait, and range of motion.  (#9 at 10–11; #17 at 4–5.)

10        Plaintiff's arguments are unavailing.  To begin, the ALJ accurately summarized the

11  impressions of two MRIs taken in April and June 2012.  As described by the ALJ, the lumbar

12  spine MRI "revealed degenerative disc disease at L5-S1 and only slight bulging in that area with

13  no acute issues."  (AR 28 (citing AR 286).)  The cervical MRI "noted multilevel degenerative

14  disc disease described as mild in severity with no acute issues, no disc protrusions, and no nerve

15  root impingements."  (*Id.* (citing AR 240).)  The ALJ concluded that neither study supported or

16  corroborated plaintiff's allegations of radiating pain into her extremities.  (*Id.* at 29.)  This was

17  perfectly consistent with the requirement that the ALJ "specify which testimony she finds not

18  credible, and then provide clear and convincing reasons, supported by substantial evidence in the

19  record, to support that credibility determination."  *Brown-Hunter*, 806 F.3d at 489.  Plaintiff

20  repeats the MRI results, but fails to point to anything that materially undermines the ALJ's

21  interpretation.  (*See* #9 at 10; #17 at 4.)

22        In addition, the ALJ did not err by failing to discuss the physical examination observations

23  cited by plaintiff.  The examinations in question were conducted by Dr. Elizabeth Jaffe in the

24  spring of 2012.  On April 24, Dr. Jaffe described plaintiff as not well-developed or nourished,

25  very thin, and having poor muscle tone.  (AR 311–13.)  Then and in other examinations, plaintiff

26  _____

27  [1] Plaintiff contends that the ALJ also discounted her credibility based on a third-party function
    report completed by plaintiff's spouse, to which the ALJ accorded "little weight."  (#9 at 8.)  The
28  court disagrees.  Although the ALJ considered the report in formulating plaintiff's RFC, there is
    no indication that it played a role in her analysis of plaintiff's credibility.  (*See* AR 28–29.)

1    exhibited a reduced range of motion or a positive straight leg raise.  (*Id.* at 313, 317, 319.)

2    However, contrary to plaintiff's assertions, such observations do not run counter to the ALJ's

3    analysis.   The ALJ did not state that *no* objective medical evidence supported plaintiff's

4    allegations of pain, but rather, that the record did not support a finding of *disabling* pain.  Further,

5    the ALJ was not required to discuss every single piece of evidence.  *See Howard ex rel. Wolff v.*

6    *Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).   Plaintiff makes much of her weight and poor

7    muscle tone, arguing that the evidence runs contrary to the ALJ's finding as to muscle wasting

8    and atrophy, but fails to acknowledge that on February 16, March 22, and May 31, Dr. Jaffe

9    described plaintiff as well-nourished with normal muscle tone, and made no mention of plaintiff's

10    weight.  (*See* #9 at 9; #17 at 5; AR 309, 322–23, 316–17.)   In light of these inconsistencies, the

11    proffered evidence appears neither significant nor probative, and the ALJ's failure to discuss it

12    was not error.  *See Howard*, 341 F.3d at 1012.

13        Second, the ALJ permissibly found plaintiff less credible based on her poor work history.

14    The ALJ relied on a summary of plaintiff's FICA earnings, which, for the thirty-eight year period

15    beginning in 1975, shows no earnings at all for sixteen years.  (AR 180.)   Of the remaining

16    twenty-two years, plaintiff earned more than $5,000 in just six years.  (*Id.*)  A claimant's "spotty"

17    work history prior to the alleged onset date may indicate he or she has "little propensity to work,"

18    rather than a lack of ability to do so.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

19    Plaintiff concedes that she "worked infrequently" prior to claiming disability, but argues that the

20    ALJ's reliance on her work history was nevertheless unreasonable given her earnings in 2009,

21    2010, and 2011, which totaled $9,265.19, $13,729.95, and $13,744.30 respectively.  (#9 at 9.)

22    The court is not persuaded.  Three years of increased earnings do not negate the prior thirty-five,

23    and substantial evidence certainly supports the conclusion that plaintiff lacks a long-term pattern

24    of working full-time.   Where an ALJ's credibility finding is reasonable and supported by

25    substantial evidence, it is not the role of the court to second guess it.  *Rollins*, 261 F.3d at 857.

26        Finally, the ALJ cites plaintiff's relative lack of treatment and her conservative course of

27    treatment as a reason for finding her testimony less credible.  Unlike the first two, based on the

28    record before the court, this reason is neither clear nor convincing.

1    Impairments that can be effectively controlled with conservative treatment are not

2    disabling.  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

3    Accordingly, a lack of treatment, or a favorable response to a conservative course of treatment,

4    generally provides a proper basis for discounting a claimant's pain testimony.  *Parra v. Astrue,*

5    481 F.3d 742, 751 (9th Cir. 2007) (finding treatment with over-the-counter pain medication

6    sufficient to discount claimant's testimony); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999)

7    (finding claim of "pain approaching the highest level imaginable" inconsistent with the 'minimal,

8    conservative treatment' the claimant received); SSR 96-7p, 61 Fed. Reg. at 34487.  In this case,

9    however, the ALJ's reasoning is deficient in two respects.  First, it is not readily apparent why the

10   ALJ found there to be a "lack of overall treatment despite [plaintiff's] access to medical care."

11   (AR 29.)  From March 2012 through December 31, 2012, plaintiff underwent, at a minimum, two

12   MRIs, seven physical therapy sessions, a spinal consultation, several physical examinations, and

13   epidural injections.  (*Id.* at 28–29, 286, 301–35, 420.)  Perhaps this is less treatment than one

14   would expect for someone with plaintiff's claimed impairments, but the ALJ's cursory statement

15   fails to explain as much.

16   Second, the ALJ's characterization of plaintiff's treatment as "conservative" is belied by

17   the record.  For her pain, plaintiff was prescribed vicoprophen and ambien, underwent physical

18   therapy, and received epidural injections.  (*Id.* at 47, 54, 247, 336–38.)  Plaintiff testified that the

19   epidural and physical therapy failed to provide relief, and that the medications only took "the

20   edge off" the pain.  (*Id.* at 54.)  The epidural shots, in and of themselves, may render the

21   treatment nonconservative.  *See Garrison*, 759 F.3d at 1015 n.20 (expressing doubt "that epidural

22   steroid shots to the neck and lower back qualify as 'conservative' medical treatment").  *But see*

23   *Torres v. Colvin*, No. 2:13–cv–0082–GMN–PAL, 2014 WL 4977321, at *17 (D. Nev. Oct. 6,

24   2014) (rejecting argument that alleged receipt of epidural, alone, overcame ALJ's characterization

25   of treatment as conservative).  Regardless, plaintiff's combination of treatments, and apparent

26   lack of relief therefrom, does not support the ALJ's conclusion that plaintiff's pain was so

27   alleviated as to render her testimony less credible.  *See Garrison*, 759 F.3d at 1015; *Donat v.*

28

1    *Colvin*, No. ED CV 14-1907-SP, 2015 WL 9470965, at \*5 (C.D. Cal. Dec. 28, 2015).  Thus, the

2    ALJ's articulated reason does not meet the "clear and convincing" standard.

3         Where an ALJ errs in part of the credibility determination, the error is harmless so long as

4    other valid reasons demonstrate that substantial evidence supports the decision.  *Molina*, 674 F.3d

5    at 1115.  Here, in light of the other two reasons cited, the ALJ's reliance on plaintiff's lack of

6    treatment or conservative treatment "does not negate the validity" of her decision to discount

7    plaintiff's credibility.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir.

8    2008) (internal quotation omitted).  The court recommends that the ALJ's credibility finding

9    remain undisturbed, and her disability determination be affirmed.

10                              **IV.    CONCLUSION**

11        For the foregoing reasons, the court concludes that the ALJ did not err in finding

12   plaintiff's testimony not fully credible.  Consequently, the court recommends that plaintiff's

13   motion for remand be denied and defendant's cross-motion to affirm be granted.[2]

14        1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file

15   specific written objections to this Report and Recommendation within fourteen days of receipt.

16   These objections should be entitled "Objections to Magistrate Judge's Report and

17   Recommendation" and should be accompanied by points and authorities for consideration by the

18   District Court.

19        2.    This Report and Recommendation is not an appealable order and any notice of

20   appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's

21   judgment.

---

[2] The court is constrained to comment on plaintiff's counsel's written work.  Both the motion (#9) and the reply (#17) are riddled with misspellings, typographical errors, punctuation errors, and grammar and usage errors.  It does not serve the client when the attorney's written work is so replete with errors that the court begins to count them, which is what happened here.  One particularly vexing habit is the writer's chronic and incorrect use of the semi-colon.  That said, careful proofreading and reference to a manual of style and usage would hugely benefit, not only the plaintiff, but opposing counsel and the court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand or reversal (#9) be **DENIED** and defendant's cross-motion to affirm (#12) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: February 18, 2016.

UNITED STATES MAGISTRATE JUDGE

11